Bell, J.
The petition of relator alleges that the underground parking lot act, of the provisions of which this court takes judicial notice, is invalid in its entirety because it is a law of a general nature which does not have uniform operation throughout the state and is thus in contravention of Section 26, Article II of the Constitution of Ohio.
In the alternative, the petition alleges that the act is invalid in its entirety because it is a special act conferring corporate powers, contrary to the limitations of Section 1, Article XIII of the Constitution.
Respondents, in their brief supporting the demurrer, concede that the act is a law of a general nature but contend that it is “of uniform operation throughout the state” within the meaning of Section 26, Article II.
Alternatively, respondents contend that, should this court determine that the act is a special act, the powers conferred upon the commission are not such “corporate” powers as would invalidate the act under the terms of Section 1, Article XIII of the Constitution.
Conceding for the moment that the act in question is a special act, the majority of the court agree with respondents in their contention concerning corporate powers. This court said in State v. Powers, 38 Ohio St., 54:
“The evils, which this provision was intended to prevent, are not found in the special privileges conferred upon such public agencies [school districts]. The evils sought to be prevented were such as resulted from special privileges conferred upon private corporations. * * * a # # #
“ It is quite obvious to us that county and township organizations, although quasi corporations, are not within the meaning of this provision of the Constitution; and, upon full consideration, we are unanimous in the opinion, that school districts, as similar organizations, though declared by statute to be bodies politic and corporate, are not within the reason or meaning of this inhibition of the Constitution.”
The same reasoning must apply, with even greater force, to a state “organization” or agency.
The General Assembly certainly has the authority to pro *407 vide by proper legislation and an accompanying appropriation of funds for the construction of a parking garage for use by officials and employees of the state of Ohio and by those having business with the state. See the dissenting opinion in Grandle v. Rhodes, Aud., 166 Ohio St., 108, 139 N. E. (2d), 328. It is the same right which the General Assembly has exercised on other occasions, viz., the Ohio Penitentiary (29 Ohio Laws, 236, 30 Ohio Laws, 24), the Statehouse Annex (93 Ohio Laws, 119), the London Prison Farm (103 Ohio Laws, 247) and the State Office Building (113 Ohio Laws, 57). And more recently, the General Assembly has provided for a commission to build a new state office building in Franklin County. Section 151.21, Revised Code.
The determinative question here is whether the same thing has been accomplished in the act under consideration. In other words, is the underground parking lot act a general law or a special law?
Except for some obvious and striking differences, the legislation under consideration might be put in the same category with those earlier provisions for the construction of state facilities. If the proposed parking garage were to be confined to use by, and only by, officials and employees of the state and by those having business with the state, then the legislation might properly be classed as a valid special act.
Judge Burket, in his opinion in Hixson v. Burson, 54 Ohio St., 470, 43 N. E., 1000, said:
“But how are we to determine whether a given subject is of a general nature ? One way is this: if the subject does or may exist in, and affect the people of, every county, in the state, it is of a general nature. On the contrary, if the subject cannot exist in, or affect the people of every county, it is local or special. A subject matter of such general nature can be regulated and legislated upon by general law having a uniform operation throughout the state, and a subject matter which cannot exist in, or affect the people of every county, can not be regulated by general laws having a uniform operation throughout the state, because a law can not operate where there can be no subject matter to be operated upon.”
The act under consideration in the Hixson case empowered *408 the county commissioners of any county which had a population of not less than 35,190 and not more than 35,200 to construct free turnpikes in such county. The second paragraph of the syllabus of that case reads:
“The act of May 16, 1894, entitled, ‘An Act to Authorize the County Commissioners to Provide for the Construction, Improvement and Repair of Public Highways,’ 91 O. L., 759, is unconstitutional in this, that its subject matter is general, while its operation and effect are local.”
There is no doubt that the operation and effect of the underground parking lot act is local. It applies to one particular location in the city of Columbus. But is its subject matter local or general?
This court has recently recognized that the subject of off-street parking is one of a general nature. In re Application for Exemption of Real Property from Taxation, 167 Ohio St., 256, 147 N. E. (2d), 625. If the subject matter of the act in question is off-street parking for the general public, it is then a subject of a general nature and must be treated by general laws having uniform operation throughout the state.
The performance of the function of judicial inquiry does not, of necessity, require that such inquiry be conducted in a legal interiority completely disassociated from the practicalities surrounding the subject of the inquiry. Even the most unsophisticated would not suppose that the income derived by the commission from officials and employees of the state and from those having business with the state would pay even the interest on the millions of dollars worth of bonds which the act provides may be issued to construct the parking garage. The plain matter-of-fact down-to-earth reality of the situation is that this garage will have to be a parking garage open to the general public and competitive in every respect with existing commercial parking facilities in order to accumulate sufficient revenue to repay the bondholders for money advanced to construct it. And the act itself clearly contemplates public parking in its provision for the issuance of revenue bonds in an unlimited amount for the construction of the underground garage. If any doubts remain on that score, such doubts are dissolved by the provision in the bond resolution, adopted by the commission, that “the *409 revenues to be obtained from fees charged and collected for the use of the underground parking lot” are to be used “to pay current expenses of the commission in * * * advertising and promoting said underground parking lot.”
Immediately the necessity for such a method of operation becomes apparent, the legislation loses any semblance of character as a special act providing for a facility local in operation and effect and becomes legislation dealing with the subject matter of off-street parking for the general- public. Obviously, the legislation, by its very terms, dealing, as it does, with the subject of off-street parldng for the general public in Columbus does not have uniform operation throughout the state and thus runs afoul of the provisions of Section 26, Article II of the Constitution.
In the case of Commissioners v. State, ex rel., 50 Ohio St., 653, 35 N. E., 887, the court was concerned with the conferring of corporate powers in what was concededly a special act. As was said by Judge Spear in that case, “that the act is a special act there is no sort of doubt.” Apparently the question involved here was not raised in that case.
Similarly, the eases of Platt, a Taxpayer, v. Craig, 66 Ohio St., 75, 63 N. E., 594, City of Cincinnati v. Trustees of Cincinnati Hospital, 66 Ohio St., 440, 64 N. E., 420, and State, ex rel. Knisley, v. Jones, 66 Ohio St., 453, 64 N. E., 424, 90 Am. St. Rep., 592, all dealt with special acts conferring corporate powers and have no application to the determination made here that the act in question is a general law.
This conclusion has not been reached easily by the members of this court. We are mindful of, and deem appropriate to this situation, the following words of Judge Shauck in State, ex rel., v. Davis, 55 Ohio St., 15, 22, 44 N. E., 511:
“We bear in mind that courts should not adjudge acts of the General Assembly to be void upon mere doubts as to their validity, and that all doubts of substantial character should be resolved in its favor. We also remember the admonition given to juries with much propriety and frequency, that doubts should not be conjured up to serve as pretexts for the failure to perform responsible duties. Questions of this character afford small opportunity for compromise or concession. The pro *410 visions of the Constitution and enactments in conflict with them cannot stand together. That conservatism is of the highest type which conserves the paramount law. The presumption in favor of the validity of legislation rests only upon what may be assumed or known of the intelligence and care with which legislators observe the boundaries of their power. Considering the evils to be remedied by this limitation, the natural and obvious meaning of its terms as well as its authoritative exposition, there remains, we think, no reason to doubt that it inhibits local legislation of this character. ’ ’
The judgment of the Court of Appeals is reversed and the writ of quo warranto allowed.

Judgment reversed and writ allowed.

Weygandt, C. J., Zimmerman, Stewart, Taet, Matthias and Herbert, JJ., concur.